UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA

WILLIAM METHENEY,

    Plaintiff,

vs.                                          Case No.:8:04-CV-1667-T-26MAP

BRINKER FLORIDA, INC., and
CHILI'S FLORIDA, INC.
Foreign Corporations,
    Defendants.
_____/

**RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I. STATEMENT OF FACTS**

The Defendant in support of its Motion for Summary Judgment filed a document entitled "Statement of Undisputed Facts." The Plaintiff states the facts are in dispute. The following recitations are the Plaintiff's version of the facts in this matter.

In 2001 Plaintiff was hired by Chili's restaurant as an Assistant manager. Each Chili's restaurant has a General Manager, at least two Assistant managers, and a key hourly employee. (Plaintiff's Affidavit ¶ 2) In each of the restaurants at which Plaintiff worked one of the assistant managers was designated an "official first". This assistant manager would be the designated person in charge, and the person designated to handle matters, although there would be another assistant manager in the restaurant. (Plaintiff's Affidavit ¶3) Plaintiff was never designated the "official first." (Plaintiff's Affidavit ¶4) 70 to 75% of the time Plaintiff worked as an Assistant manager with Chili's, there was an official first or General Manager

present in the restaurant. (Plaintiff's Affidavit ¶ 4)  Plaintiff was alone in the restaurant without a first or General Manager only two days a week (Plaintiff's Affidavit ¶ 4).

Keeping labor and overtime costs was a concern for Chili's. Manager's salaries were not included in a store's labor costs. (Tabolt Depo. Pg. 29) Chili's would use the managers who were not included in the labor costs to replace hourly employees who may be sent home to avoid paying them overtime. (Smith Depo Pg. 69, Plaintiff's Affidavit ¶ 7)

Though as Assistant Manager, Plaintiff drafted work schedules, they were always to be approved by the General Manager who always changed his entries. (Plaintiff's Affidavit ¶ 14) Any repairs that needed to be done at the restaurant that Plaintiff could not fix himself would have to be handled by the General Manager. Plaintiff did not have the authority to authorize a repair person to do the work.(Plaintiff's Affidavit ¶ 8)  Plaintiff had the authority to cure customer complaints only to include not charging a customer for a meal, if a customer requested vouchers for free meals, Plaintiff needed to request them from the General Manager. (Plaintiff's Affidavit ¶ 9)

Plaintiff had no authority to hire and fire, (Plaintiff's Affidavit ¶ 11,12,17) nor the authority to adjust an employees pay. (Plaintiff's Affidavit ¶ 13) Plaintiff was not even aware of any hourly employee's rate of pay. (Plaintiff's Affidavit ¶ 13) He had no authority to close the restaurant early (Talbot Depo Pg. 53)

Plaintiff played no part in preparing the restaurant's budget, maintain time records, track inventory or track store performance. (Plaintiff's Affidavit ¶

2

18,19,20,21). Plaintiff worked an average of 60 hours per week. All managers were expected to perform tasks that the hourly employees performed, (Plaintiff's Affidavit ¶ 10) as opposed to be involved exclusively in management tasks.

If opening the restaurant, Plaintiff typically would arrive and spend the first five hours of his shift stocking the kitchen for the day by cooking rice, potatoes, beans and any other side item which the entrées contained. During this time the only other employee in the restaurant was the cook. Shortly before opening the store at 11:00 a.m., the wait staff would arrive. In the meantime, he would still be in the kitchen prepping food with such additional tasks as, preparing salsa, cutting vegetables, frying salsa chips, preparing hoagie rolls, and preparing the Portobello mushrooms. During the lunch hour, he would remain in the kitchen preparing salads, preparing nachos, and frying. If the cook was running behind he would often place steaks, poultry or fish on the grill for him or her. For the last one or two hours of his shift he would cash out the servers. (Plaintiff's Affidavit ¶23)

If working mid shift, he would spend the first 30 minutes preparing the cash drawers and making sure the restaurant is clean and help seat customers. He then would help get food out to the customers or help kitchen staff do the cooking, until 1:30. He would them walk through the store, and help the morning manager transition out of the kitchen, by taking over his or her kitchen duties. The kitchen would have to be prepared for dinner, making sure the kitchen was fully stocked, by preparing all the food that was expended during lunch. (Plaintiff's Affidavit ¶23) From 5:30 to 8:30 or 9:00 he would stay in the kitchen

3

and help prepare dinners until the end of his shift. (Plaintiff's Affidavit ¶24)

If working closing shift, Plaintiff began the day by walking through the restaurant and making sure it was ready for dinner. From 5:30 to 9:30 p.m. he helped serve the food to the customers, by either making sure the servers knew the entrees were ready or serving the entrees himself. If the kitchen became busy he would help prepare food in the kitchen. The hostess would go home around 10:00p.m. and he would seat customers until closing. After closing he would check out wait staff and help clean. (Plaintiff's Affidavit ¶25)

As Assistant Manager, Plaintiff's work hours were as follows: Opening shift was generally from 5:30 a.m. to 5:30 to 7:30 p.m., mid shift would be from 10:00 a.m. to 10:00 p.m., close shift from 3:15 or 3:30 p.m. to between 12:00 a.m. and 2:30 a.m. (Plaintiff's Affidavit ¶26)

## II.  ARGUMENT

### A.    ENTITLEMENT TO OVERTIME PAY

The Fair Labor Standards Act States:

> No Employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. §207(a)

Several exemptions are set forth in the statute. One of the exemptions is that for "executive" employees. If this status is challenged by the employee, it is

4

the employer's burden to show the executive exemption is applicable **not** the employee's burden to show it is not, Brock v. Norman's County Market, 835 F. 2d 823 (11th Cir.1988). These exemptions are to be very narrowly construed against the employer. Mitchell v. Kentucky Finance, 359 U.S. 290 (1959), Thomas v. Jones Restaurants, 64 F. Supp. 2d 1205 (M.D. Ala. 1999), and very cautiously allowed, Nicholson v. World Business Network, Inc, 105 F. 3d 1361 (11th Cir.1997).

The executive employee exemption applies only to those employees who fall clearly and unmistakably within its terms and spirit. A.H. Phillips v. Walling, 324 U.S. 490,493 (1945). When this issue is litigated, for summary judgment to be granted, no issue of fact must exist in the applicability of the exemption, Evans v. McClain of Georgia, 113 F. 3d 957 (11th Cir.1997).

Determination of the executive exemption is determined by applying either a long test or a short test. 29 CFR §541(f), the short test is applicable to employees whose salary is more than $250 per week. It is uncontroverted the Plaintiff's salary exceeded $250 per week therefore the short test is to be used in this Court's analysis.

For the exemption to apply the employee must be one "whose primary duty consists of the management of the enterprise and includes the customary and regular direction of the work of two or more employees" [Emphasis added] ,29 CFR §541.1(f). In further defining the meaning of "primary duty" 29 CFR §541.103 states: "if an employee devotes more than 50% of their time on management activities, management is considered his or her primary duty." Yet

5

the Code provides that the determination of an employee's primary duty must be "based on all the facts in a particular case."

In the instant case the record is devoid of any evidence the Plaintiff spent fifty percent (50%) of his day on management activities. To the contrary an examination of Plaintiff's actual daily activities shows little to no management activities because he was usually accompanied in the store by a General Manager or "official first," who would take care of any management activities. Plaintiff was essentially a third level supervisor. Plaintiff testified 70 to 75% of the time, another higher level manager was in the store, during different periods of time one of his general managers was there 7 days a week, while in the Winter Haven store, where labor costs was always an issue, he performed the kitchen prep work.

Plaintiff had little or no discretion, and was not involved in the store functioning as an "executive" employee to qualify for the exemption.

The regulations further provide guidance as to other pertinent factors which may lead to the conclusion that employee's primary duty is that of management, so that the exemption may apply. 29 CFR §541.103 set forth these pertinent factors, they include: the relative importance of the managerial duties as compared with other duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision and the relationship between his salary and the wages other employees for the kind of non exempt work performed by the manager.

Plaintiff's only opportunity to perform any managerial duties was for the

6

25 to 30% of his workweek he was the top manager at the store. This only occurred two days a week. During the 25 to 30% Plaintiff also performed non-exempt tasks such as kitchen prep and seating patrons. Much of his kitchen prep work was to save the store labor costs. In essence Chili's would use Metheny, to whom it did not need to pay overtime, to perform non-exempt work instead of paying an hourly employee overtime.

The volume of non-exempt work Metheny performed, and the relative infrequency he was alone in the store, without a General Manager or a first, is sufficient to raise material issues of fact regarding whether Plaintiff qualifies as an executive under the exemption.

With regards to discretionary authority 29 CFR §541.107 states:

> Discretionary Powers
>
> (a) Section 541.07(d) requires that an exempt executive employee customarily and regularly exercise discretionary powers. A person whose work is so completely routinized that he had no discretion does not qualify for the exemption.
>
> (b)      . . . The requirement will only be met by the employee who normally and recurrently is called upon to exercise discretionary powers in the day-to-day performance of his duties. The requirement is not met by the occasional exercise of discretionary power.

There is no evidence the Plaintiff was able to regularly exercise any discretionary authority. 70 to 75% of the time he was not the manager on duty, when he was it comprised only two days of the workweek. Defendant cites, Plaintiff's ability to interview potential employees, yet he had no authority to hire them. He handled

7

customer complaints, when he was the only management in the store, but could only remedy the complaints to the extent of refunding the price of the meal. He could not provide vouchers for free future meals. If given the opportunity to order inventory, it was for the bar, and he was told what to order by a computer program.(Plaintiff's Depo Pg. 116)  When Metheny requested to order a certain type of liquor he was not allowed. Though he would draft the schedules for employees it would always be altered by his General Manager. If the store needed a repair, and if it was not something he could fix himself, he could not employ a contractor on behalf of Defendant, his General Manger would have to remedy the situation. Metheny had no authority to fire employees, or give raises. He did not prepare any budgets for the restaurant, maintain records, inventories or accounting records.

     Preparing work schedules, directing the work of employees and providing work assignments does not, standing alone entitle an employer the use of the executive exemption. In <u>DiGregorio v. Temple University</u>, 1983 WL 2147, Plaintiff was an Assistant Equipment Manager. He prepared schedules, under the direction of his manager, assigned work locations and coordinated workloads. In finding the Plaintiff did not qualify as an exempt employee, the Court noted, Plaintiff had no authority to hire employees, had no input in the budgetary process, could not adjust rates of pay for his subordinates, could not grant vacation or sick leave, and basically only decided who would be in a particular place and when. The Court found DiGregorio's supervisory capacity was *de minimus* and did not extend beyond merely instructing and supervising his

subordinates in a limited sense.

In <u>Depew v. Shopko,</u> 2005 WL 1421381 (E.D.ID.2005), the Court denied Defendant's motion for summary judgment where material issues of fact exists as to the extent to which Plaintiff can make managerial decisions, the frequency of their managerial decisions and the importance. The Assistant Managers in Depew had far more authority than the Plaintiff.

In <u>Depew</u>, one manager had the authority to hire and fire, handle customer complaints, as well as employee complaints, wrote performance evaluations, and schedules. The other manager supervised employees, drafted performance evaluations, and had the authority to hire and fire and consults with her superiors on issues of hiring and disciplinary actions. The managers in <u>Depew</u> had far more managerial functions and authority than Plaintiff, yet the Court declined a Motion for Summary Judgment.

Further, Plaintiff was not free from supervision. 70 to 75% of his week was spent under the supervision of another manager.

In urging this court to find as a matter of law that Plaintiff qualifies for the executive exemption, Defendant argues Plaintiff was often left "in charge" of the store while the manager was absent. As noted above, Plaintiff was left "in charge" very infrequently.

The Code of Federal Regulations speak to providing exceptions to those who are left in "sole charge", but provides a caveat in applying an exemption.

29 CFR §541.113 states:

    Sole Charge Exception

9

> . . .since an employee must be in 'sole charge' only one person in any establishment can qualify as an executive under this exception, and then only if he is the top person in charge at that location.

To be exempt, the Plaintiff would have to be placed in the top position in the store. The Plaintiff, one of the Assistant Managers, is clearly not in the top position for the store which he worked.

This inquiry becomes important as many of the cases cited by the Defendant involve plaintiffs who are the top managers at their establishments. In <u>Glefke v. K.F.C. Take Home Food</u>, 1993 WL 521993, (E.D.Mich.1993) Plaintiff was a store manager in "sole charge while she worked." In <u>Murray v. Stuckey's</u>, 50 F. 3d 564 (8th Cir.1994) top store managers were also involved. In <u>Jones v. Virginia Oil Company</u>, 2003 WL 21699882 (4th Cir.2003) Plaintiff, the store's top manager, characterized herself as the "person in charge of everything." Plaintiff is not such an employee.

Defendant also insists Plaintiff's rate of pay was commensurate with that of a "manager" as he was paid at a much higher rate than that of any hourly employees. Defendant states the highest paid cook earned $12.50 per hour. Yet comparing plaintiff's pay based on a 60 hour workweek, Plaintiff's beginning hourly rate was $11.78 per hour and ending pay $12.80. His rate of pay did not differ greatly from the cooks employed by Defendant.

In the final analysis, Plaintiff was, at most, a "working foreman" who worked alongside the other employees. He cooked, bussed tables, seated guests, brought patrons their food and tended bar. The Code further warns against finding these type employees as executives.

10

>29 CFR 541.115 states:
>
>Working Foreman
>
>(a) The primary purpose of the exclusionary language placing a limitation on the amount of nonexempt work is to distinguish between the bona fide executive and the 'working' foreman or 'working' supervisor who performs. . work which is unrelated or only remotely related to his supervisory activities.

The Eleventh Circuit has ruled in the past that working foreman do not qualify for the overtime exemption, Brock v. Norman's County Market, 835 F.2d 823 (11th Cir.1988).

In examining Plaintiff's typical day most, if not all, of his duties relate to non-managerial functions with no relation to management.

Defendant has failed to prove as a matter of law that Plaintiff is an "executive" employee. Defendant has a very high burden of proof which it has failed to establish. This is high burden is clearly exemplified in the case of Sack v. Miami Helicopter Service 986 F. Supp. 1456 (S. D. Fla. 1997).

In Sack, the employee claiming overtime was the director of maintenance for a helicopter service company. This particular director spent twenty percent (20%) of his time doing hands on work, fifty percent (50%) of his time doing inspection work. He, on two (2) occasions, interviewed and hired part-time, temporary mechanics. He had the authority to sub-contract. He supervised two (2) employees. He spent twenty percent (20%) of his time organizing and maintaining the technical library. He actually revised company manuals. Though this particular employee had the authority to contract, hire and direct the work of

11

employees, the Court ruled the exemption inapplicable. The Court found that he did not exercise his discretionary power on a regular basis and that he had very limited authority to hire and fire, Id. at 1468.

The Plaintiff exercised no discretion in his job, other than dealing with customer complaints, had no authority to hire and fire employees, and had no contractual authority. He clearly is not the type of employee the exemption was intended to exempt. As such, summary judgment in favor of the Defendant is improper as a reasonable jury could determine that Plaintiff was not an "executive"

## B. CALCULATION OF DAMAGES

Defendant contends Plaintiff was properly paid a salary every two weeks with no payment of overtime in any form. Yet Defendant urges this Court to find if overtime is due, it be calculated on the "fluctuating workweek" method. The pertaining part of the regulations which explain this method is as follows:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for what ever hours he is called upon to work in a work week weather few or many. Where there is a clear mutual understanding of the parties that the fix salary is compensation ( apart from overtime premiums) for the hours worked each work week, whatever their number, rather then for working forty hours or some other fixed weekly work period, such a salary arrangement is permitted by the act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less then the applicable minimum wage for every hour worked in those work weeks in which the number of hours he works is greatest, and if he receives extra compensation, in

12

> addition to such salary, for all overtime hours worked at a rate not less than one half his regular rate of pay. …typically, such salaries are paid to employees who do not customarily work a regular schedule of hours and are in amounts agreed on by the parties as adequate straight time compensation for long work weeks as well as short ones, under the circumstances of the employment as a whole. Where all the legal prerequisites for use of the "fluctuating work week" method of overtime payment are present, the act, in requiring that "not less than" be prescribed premium of fifty percent for overtime hours work be paid, does not prohibit paying more. On the other hand, <u>where all the facts indicate that the employee is being paid for his overtime hours at a rate no greater than that which he receives for non-overtime hours, compliance with the act cannot be rested on any application of the fluctuating work week overtime formula.</u> [Emphasis Added] 29 CFR 778.114

The Defendant urges this Court to find as a matter of law the Plaintiff "Clearly understands that the salary covers what ever hours the job may demand in a particular work week and the employer pays the salary even though the work week is one in which a full schedule of hours is not worked", Plaintiff disputes that there was ever such agreement.

In <u>Bailey v. County of Georgetown</u> 94 F. 3d 152 (4th cir. 1996) whether there was the existence of such an understanding between Plaintiff and Defendant is a question to be answered by a jury. <u>Id.</u> at 155.

Furthermore Defendant argues, though it did not on its own provide for additional compensation for hours over forty (40), it should be allowed to now apply this calculation method to avoid having to pay time and a half for any hours over forty (40). The Regulation clearly states where the employer was not compensating the employee for overtime hours at a rate greater that his regular

13

rate, it cannot take advantage of the regulation. It is uncontroverted that Plaintiff was not paid any premium for hours worked over forty (40), therefore application of this method is improper.

Plaintiff respectfully requests Defendant's Motion for Summary Judgment be denied.

s/ **Merette L. Oweis**_____
MERETTE L. OWEIS, ESQUIRE
DICESARE, DAVIDSON & BARKER
FLA. BAR NO. 0001521
P. O. BOX 7160
LAKELAND, FL 33807-7160
(863) 648-5999
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: James R. Wiley, Esquire and Merette L. Oweis, Esquire.

s/ **Merette L. Oweis**_____
MERETTE L. OWEIS, ESQUIRE
DICESARE, DAVIDSON & BARKER
FLA. BAR NO. 0001521
P. O. BOX 7160
LAKELAND, FL 33807-7160
(863) 648-5999
ATTORNEY FOR PLAINTIFF